**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SCOTT E. CUMBERLAND,            )
                                )
            Plaintiff           )
            v.                  )        02: 12-cv-01671
                                )
CAROLYN W. COLVIN,              )
Acting Commissioner of Social Security,  )
                                )
            Defendant.          )

**MEMORANDUM OPINION AND ORDER OF COURT**

July 3, 2013

**I.        Introduction**

Plaintiff, Scott E. Cumberland ("Cumberland"), brought this action pursuant to 42 U.S.C. § 405 (g) and 1383(c)(3), for judicial review of the final determination of the acting Commissioner of Social Security ("Commissioner") which denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401—403; 1381—1383(f).

**II.       Background**

A.      Facts

Cumberland was born on January 9, 1966; graduated from high school; and has past relevant work experience as an assembler, laborer, production checker, cleaner, and courier—all of which is unskilled work. (R. 21).

1

Plaintiff alleges having become disabled as of November 10, 2009, due to a recurrent incarcerated ventral hernia. (R. 183). The record reflects that he has not been able to engage in substantial gainful employment since November 2009. (R. 184). Although not alleged by Cumberland, the Administrative Law Judge ("ALJ"), Brian W. Wood, found that he had been diagnosed with several other severe physical impairments, namely mild mental retardation[1], osteoarthritis of the knees, obstructive sleep apnea, and obesity which imposed more than minimal restrictions on his ability to perform basic work activity. (R. 15). Cumberland has also been diagnosed with diabetes mellitus and hypertension, both of which, he testified, are controlled with medication and do not cause any significant limitations. (R. 16).

In 2004, Tony M. Maalouf, M.D., noted that Cumberland weighed more than 450 pounds and was diagnosed with "super obesity," with a Body Mass Index ("BMI") of 70.5. (R. 331). In 2004, Edwin Rao, M.D., also diagnosed Plaintiff with severe obstructive sleep apnea. (R. 297). Despite these conditions, Cumberland was able to maintain employment. (*See* R. 203, Work History Report) (Plaintiff was employed every year from 1991 to November 09, 2009, the alleged onset date of the disability, and from 2004—2007 held two jobs, for two different employers).

Dr. Maalouf performed a successful laparoscopic Roux-en-Y gastric bypass surgery in June, 2004. (R. 328). Dr. Maalouf opined that Plaintiff was making progress with subsequent weight loss and noted that the plaintiff was "doing very well" two and one-half

---

[1] Plaintiff's mental retardation level does not meet the listing level of mental retardation and does not affect unskilled work. Plaintiff's mental retardation is not an issue on appeal.

weeks following the surgery. (R. 327, 329). Initially, Cumberland lost 72 pounds. (R. 328). In the year following his surgery, Plaintiff reported no shortness of breath, airflow obstruction, or issues with using his C-Pap. (R. 334—35). Dr. Maalouf noted, however, that Cumberland "is apparently not a very compliant patient as far as dietary instructions." (R. 326). Despite Cumberland's assurance that he was following his strict diet, his weight loss tapered. (R. 325). In 2005, Dr. Maalouf opined that Plaintiff was not exercising or following his diet.  By 2010, Cumberland's weight again exceeded 420 pounds.

Cumberland had hernia-repairing surgery in 2007 and Dr. Maalouf noted during a post op visit that although he recovered well, "because of patient's morbid obesity, he has a high risk of this recurring." (R. 324). An examination in 2008 revealed that Cumberland showed no dyspnea on exertion. (R. 354). In 2009, Plaintiff had surgery to repair another incarcerated ventral hernia. (R. 239). Another exam in 2010 revealed that despite Plaintiff's smoking habit, cardiac functioning was normal (R. 337), and that his hypertension and arthritis were "improving." (R. 348). On January 6, 2011, Cumberland had his final visit regarding his ventral incisional hernia. There was no sign of recurrence, but Dr. Maalouf stressed the importance of not engaging in any job that requires lifting more than 20 pounds. (R. 323). Dr. Maalouf also noted on January 16, 2011, that Plaintiff's 2004 gastric bypass surgery was "not very successful because of patient's noncompliance" with calorie intake and exercise. (R. 322).  In February 2011, Cumberland had an abdominal wall abscess removed. (R. 322). On May 5, 2011, Plaintiff was described by his primary care physician, Swamikkan Nallathambi, M.C., P.C., as "healthy appearing," despite weight gain and continued smoking, and Plaintiff's diabetes remained benign. (R. 336).

3

The vocational record includes a report from Career Opportunities for the Disabled by Plaintiff's job coach, Melissa Ciochetto, regarding an effort by Cumberland to resume work in November, 2010. (R. 231). She noted that Plaintiff showed physical difficulty at the end of the second day of custodial work cleaning classrooms (R. 231), evidenced by slow paced walking and leaning on the wall (R. 231). On the third day, Cumberland was able to complete only one-half of the first floor of the high school. Plaintiff's employment was then terminated. (R. 231). The ALJ concluded that this attempt at work was unsuccessful and did not qualify as substantial gainful activity.

At the administrative hearing, the vocational expert ("VE"), Dr. Fred Monaco, opined that Plaintiff's past work as an assembler, production checker, cleaner, and courier was unskilled and varied from light-to-heavy levels of exertion. (R. 56-57). The ALJ posed a hypothetical to the VE to consider an individual with Plaintiff's vocational profile, but limited to the light exertional level, lifting up to 20 pounds occasionally and 10 pounds frequently; requiring a sit or stand option every thirty minutes with the capacity to stand or walk for two hours of an eight hour workday and to sit for six hours of an eight-hour workday; never requiring climbing ladders, ropes, scaffolds, or crawling, but occasionally climbing ramps and stairs and balancing, stooping, kneeling, crouching, twisting, pushing or pulling with bilateral upper extremities; and unskilled work activity. (R. 59). The VE opined that an individual could perform a representative sample of jobs to accommodate the hypothetical, specifically, bench assemblers and fabricators (76,000 jobs in the national economy at the light level of exertion), hand packers and filling machine operators (470,000 jobs in the national economy at the light level of exertion), and various hand working occupations in

typing, trimming, molding, casting, etc. (approximately 57,000 jobs in the national economy at the light level of exertion). (R. 58—60). The ALJ altered the hypothetical to reduce the individual's exertional category to sedentary, and the expert indicated that the past work jobs would be eliminated, but that there would still be jobs available in the national economy. (R. 59). The ALJ subsequently asked the VE to assume additional hypothetical limitations that the individual would be off-task twenty percent of the workday and that he would miss two days of work per month.[2] (R. 59). The VE indicated that both hypotheticals would eliminate any work options. (R. 60). Plaintiff's counsel then asked the VE to assume that the individual was limited to light work, and that such a person required an extra fifteen minute break in the morning and afternoon, to which the VE opined that there would be no available jobs in the national economy. (R. 60).

    a.    <u>ALJ's Findings</u>

On May 31, 2011, the ALJ issued a decision in favor of Defendant. (R. 10—27), The ALJ found that Plaintiff has severe impairments including mild retardation, recurrent incarcerated ventral hernia, osteoarthritis of the knees, obstructive sleep apnea, and obesity (R. 16), but that Plaintiff does not have an impairment or combination of impairments that meet one of the listed impairments in the Social Security Regulations. (R 17). The ALJ concluded that Cumberland retained the residual functional capacity ("RFC") to perform light work (as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)), subject to additional

---

[2] Plaintiff is not raising the two days absenteeism restriction issue on appeal.

limitations, and was able to perform the jobs of bench assembly/fabricators, hand packers/filling machine operators, and hand working occupations. (R. 23).

In reaching the decision, the ALJ recognized that there is no listing for obesity specifically (R. 16) and considered the effect of Plaintiff's obesity in accordance with SSR 02-01p. (R 17). The ALJ recognized that Dr. Maalouf found Cumberland to be temporarily disabled from November 10, 2009 through October 31, 2010, and then rendered him permanently disabled in a second employability assessment dated December 29, 2010, but explained at length why Dr. Maalouf's opinion is not entitled to controlling weight.[3] (R. 21). The ALJ explained that there was no identification of any clinical findings to support the opinion or reflect such disabling level of impairment in the record. (R. 21). The ALJ noted that the opinion is inconsistent with the other evidence of record, "including the Plaintiff's own testimony and activities of daily living, and the treatment history showing relatively infrequent and conservative treatment." (R. 21). Additionally, the ALJ considered the statement submitted by the Plaintiff's cousin, Kimberly Ifft that his hernia has limited his ability to work, volunteer with a fire department, bowl, and play basketball with his daughter. (R. 21). The ALJ concluded that these limitations are credible and consistent with the above residual functional capacity for a limited range of light work. (R. 21). The ALJ also decided that Ifft's testimony that Plaintiff gets upset and is depressed was not supported by any medical evidence of record as Cumberland has not complained of, or sought treatment for, depression. (R. 21).

---

[3] The ALJ's consideration of the opinions of the treating physician is not at issue in this appeal.

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the third and fifth steps of the sequential evaluation process, specifically. (R. 15—23). In reaching these determinations, the ALJ first concluded at step one that Plaintiff had not engaged in substantial gainful activity since November 10, 2009. (R. 15). At step two, the ALJ found that Plaintiff's impairments of mild mental retardation, recurrent incarcerated ventral hernia, osteoarthritis of the knees, obstructive sleep apnea, and obesity were severe, causing "more than a minimal effect on [Plaintiff's] ability to perform basic work activities."[4] (R. 15). However, the ALJ determined that Plaintiff's impairments, or combination of impairments, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404 app. 1; 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), therefore finding Plaintiff not disabled at step three (3) of the sequential evaluation process. (R. 16).

At step four, after careful consideration of the record, the ALJ determined that Plaintiff was unable to perform his past work, but had the residual functional capacity to perform light, unskilled work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The Plaintiff's alleged ongoing hernia and symptoms yield no evidence that would preclude Plaintiff from substantial gainful activity. (R. 19). The ALJ found that Plaintiff's osteoarthritis of the knees, severe obstructive sleep apnea, and mental impairment conditions are not inconsistent with the residual functional capacity, which includes a limitation to light, unskilled work. (R. 20). Considering the statement submitted by Plaintiff's cousin (R. 21),

---

[4] The ALJ properly concluded that Plaintiff's diabetes mellitus and hypertension were not severe, as both conditions are controlled with medication and the Plaintiff testified that the conditions do not cause any significant limitations. (R. 16).

and considering (but attributing little weight to) the opinion of Plaintiff's treating physician, the evidence of record, testimony, daily living activities and treatment history (R. 20), the ALJ found that the "residual functional capacity assessment is supported by objective medical evidence showing that Plaintiff has had a recurrent hernia, but that it was treated effectively with surgery." (R. 21).

Finally, at step five, the ALJ found that considering the Plaintiff's age, education, work experience, residual functional capacity, and VE testimony, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform pursuant to 20 C.F.R. §§ 404.1569, 404.1569, 416.969, and 416.969. (R. 22). As a result of the Plaintiff's residual functional capacity to perform the full range of light work, notwithstanding limitations on Plaintiff's skill level of work, the ALJ concluded that Cumberland is not disabled within the meaning of the Act. (R. 22).

B.      Procedural History

Plaintiff initially filed an application for SSI/DIB on January 8, 2010, in which he claimed total disability since November 10, 2009. (R. 13). These claims were initially denied on March 26, 2010. Thereafter, Plaintiff filed a written request for which was held on May 26, 2011, before an ALJ. (R. 13).  Cumberland was represented by counsel and testified at the hearing. (R. 13). Fred A, Monaca, Ph.D., a vocational expert, also testified. (R. 13).

On May 31, 2011, the ALJ rendered an unfavorable decision to Plaintiff. (R. 13—23). The ALJ's decision became final on September 21, 2012, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.  (R. 1—6).

8

On March 25, 2013, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the Commissioner's decision. (R. 1—6). The parties have filed cross-motions for summary judgment. Plaintiff argues that the ALJ "did not consider Plaintiff's obesity at step three in connection with the other co-existing impairments." (Pl.'s Br. at 12).  Specifically, Plaintiff argues that the ALJ failed to address the impact of the combination of Plaintiff's obesity with sleep apnea and hernia. (Pl.'s Br. at 12). Further, Plaintiff contends that the ALJ "failed to acknowledge let alone analyze how Plaintiff's obesity leads to his fatigue and impacts his ability to sustain function at step five." (Pl.'s Br. at 12).

The specific issue on appeal is two-fold: (i) whether the ALJ correctly applied SSR 02-01p in evaluating the severity of the Plaintiff's extreme obesity at step three; and (ii) whether the ALJ complied with SSR 02-01p in considering the impact of the Plaintiff's obesity on his ability to work at step five. (*See* R. 234). The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence that the Plaintiff has not been under a disability within the meaning of the Social Security Act from November 10, 2009 through the date of this decision. (R. 13). The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

III.    **Legal Analysis**

A.    <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g); 1383(c)(3). If the Commissioner's finding is supported by

substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g);

*Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court

has defined "substantial evidence" as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Capato v. Comm'r. of Soc. Sec.*, 631 F.3d 626, 628 (3d Cir. 2010) (internal citation omitted). It

consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v.*

*Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010). As set forth in the Act and

applicable case law, this Court may not undertake a de novo review of the Commissioner's

decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d

1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review

the findings and conclusions of the ALJ to determine whether they are supported by substantial

evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'r. of Soc. Sec. Admin.,* 181 F.3d 429, 431

(3d Cir. 1999).

   In situations in which a Plaintiff files concurrent applications for SSI and DIB, courts

have consistently applied a single disability standard under the Act. *See Burns v. Barnhart,* 312

F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of

qualifying for SSI] is the same as that for determining whether a person is disabled for purposes

of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* §

404.1520."); *Sullivan v. Zebley,* 493 U.S. 521, 525 n.3 (1990) (holding that regulations

implementing the Title II [DBI] standard, and those implementing the Title XVI [SSI] standard

are the same in all relevant aspects.); *Morales v. Apfel,* 225 F.3d 310, 315—16 (3d. Cir. 2000) (stating Plaintiff's burden of proving disability is the same for both DIB and SSI).

To determine whether an adult Plaintiff is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a Plaintiff (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Comm'r. of Soc. Sec.*, 347 F.3d 541, 545—46 (3d Cir. 2003) (*quoting Burnett v. Comm. of Soc. Sec.*, 220 F.3d 112, 118—19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a Plaintiff must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari,* 247 F.3d 34, 38—39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

(1)  by introducing medical evidence that the Plaintiff is disabled per se because he or she suffers from one or more of a number of serious impairments listed in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545—46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

(2)  in the event that Plaintiff suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial

gainful work which exists in the national economy . . . ." *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a Plaintiff must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Newell,* 347 F.3d at 545—46; *Jones,* 364 F.3d at 503. Once it is shown that Plaintiff is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given Plaintiff's mental and physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

Where a Plaintiff has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Comm'r. of Soc. Sec,*, 577 F.3d 500, 502 (3d Cir. 2009); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

B.    Discussion

1. *The ALJ's Decision Is Supported By Substantial Evidence, As He Adequately Evaluated The Plaintiff's Impairment Or Combination Of Impairments As Not Meeting or*

*Equaling A Listing in 20 C.F.R. Part 404, Subpart P, Appendix I, When Determining That*
*Plaintiff Is Not Disabled Under The Act.*

Cumberland's first argument is that the ALJ did not properly consider his obesity at step three in connection with the other co-existing impairments. (Pl.'s Br. at 12). In particular, Plaintiff claims that the ALJ failed to address the impact of the combination of his hernia and obesity, though not disputing the ALJ's determination that Cumberland's recurrent hernia condition did not rise to the listing level. (R. 324). Similarly, although Plaintiff does not dispute the ALJ's finding that his sleep apnea condition did not rise to the listing level (R.16), Plaintiff alleges that the ALJ failed to address the impact of the combination of his sleep apnea and obesity on his ability to sustain gainful activity. (R. 16).

Listing 9.09 Obesity was deleted on October 25, 1999 from the Listing of Impairments in 20 C.F.R., subpart P, Appendix 1, and superseded by Social Security Ruling ("SSR") 02-1p. *See* 64 FR 46122 (1999). The ALJ correctly noted that there is no listing for obesity for the purposes of step three. (R. 16). However, as outlined in SSR 02-1p, there are three situations in which obesity will meet the requirements of a listing: 1) there is another impairment that, by itself, meets the requirements of a listing, or an impairment that, in combination with obesity, meets the requirements of a listing; 2) obesity by itself may only be medically equivalent to a listed impairment if, the obesity is of such a level that it results in an inability to ambulate effectively; and 3) there may be multiple impairments, including obesity, none of which meets or equals the requirements of a listing, but the combination of impairments causes signs, symptoms, and laboratory findings that are of equal significance to

13

one of the listings in 20 C.F.R. Part 404 Subpart P, Appendix 1. Social Security Ruling, SSR 02-1p; Titles II and XVI: Evaluation of Obesity, 67 FR 57859-02 "*7. How Do We Evaluate Obesity at Step 3 of Sequential Evaluation, the Listings?*" *See also* 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (R. 16).

The ALJ cited SSR 02-01p and analyzed each of those limited circumstances. (*See* R. 16). The ALJ concluded that the Plaintiff is able to ambulate effectively and that his obesity does not meet or equal a listing. (R. 16). The ALJ also concluded that Plaintiff's obesity has not resulted in impairment of any other body system that would qualify under the listing: Plaintiff's osteoarthritis (*see* Listing 1.02), sleep-related breathing disorders (*see* Listing 3.09 and 12.02), and recurrent hernia conditions do not meet or equal the criteria or conditions of their respective listings. (R. 16). Likewise, Plaintiff's mental impairment did not meet the required level of severity for the disorder according to listing 12.05 for failure to meet the requirements of paragraphs A, B, C, and D. (R. 16).

In reaching those conclusions, the ALJ properly evaluated the effects of Plaintiff's obesity at step three of the sequential evaluation. In analyzing individual impairments that might meet the requirements of a listing, a listing is met if an impairment satisfies the diagnostic description in the introductory paragraph of the listing. SSR 02-1p. Plaintiff argues only that the ALJ failed to consider the effects of Plaintiff's obesity on his hernia and sleep apnea conditions. (Pl.'s Br. At 12)[5].

---

[5] Plaintiff does not contest the ALJ's finding that Plaintiff's osteoarthritis of the knees does not meet or equal the criteria of Listing 1.02, or that Plaintiff's mental impairment does not meet listing 12.05. 20 C.F.R. § 404 app. 1.

First, listing 3.10 instructs the ALJ to evaluate the sleep-related breathing disorders under 3.09 (chronic cor pulmonale) or 12.02 (organic mental disorders). 20 C.F.R. § 404 app. 1. Listing 3.09 Cor polmonale secondary to chronic pulmonary vascular hypertension requires clinical evidence of cor pulmonale with either mean pulmonary artery pressure greater than 40 mm Hg or Arterial hypoxemia as measured under the criteria of 3.02C2 pulmonary function tables. The ALJ correctly found that the medical record contains no such evidence. (R. 16). Plaintiff was diagnosed with his obesity-related sleep apnea condition in 2004 and lived with the condition for several years while he continued to work. (R. 20). Further, when Plaintiff was prescribed a new C-Pap in 2010, the record reveals that he had a normal respiratory functioning and energy level upon examination. (R. 337). Because there is no evidence to suggest that Plaintiff's obesity intensified his sleep apnea condition such that the disorder would meet the requirements of either listing 3.09 or 12.02, the ALJ correctly concluded that Plaintiff's condition does not qualify as a listing for the purposes of SSR 02-1p.

Second, the ALJ correctly concluded that the objective evidence regarding Plaintiff's recurrent hernia condition does not meet the criteria of listing level severity. (R. 16.). The ALJ quoted and applied the criteria in Listing 5.06, and neither party has cited any other relevant listing regarding a recurrent ventral incisional hernia.  The Court has found no such listing in its own research, and Plaintiff has not challenged the ALJ's evaluation of the criteria contained in Listing 5.06 on appeal. In fact, the record reflects that at most, the hernia poses potentiality to recur, and if it does, it can be remedied via surgery as evidenced by Plaintiff's past experience. (R. 276—279). Plaintiff contends that the recurrent ventral incisional hernias of 2007 and 2009,

and the abdominal wall that abscessed in February of 2011 (R. 324, 238—268, and 279), are

due to his obesity. (Pl.'s Br. at 12). However, there is no medical evidence that the hernia

condition has caused "obstruction, anemia, decreased albumin levels, abdominal mass, perineal

disease, involuntary weight loss, or the need for enteral nutrition." (R. 16). There is no evidence

in the medical records that Dr. Maalouf considered the hernia to be a permanent condition

expected to last for more than twelve months.[6] Moreover, as properly noted by the ALJ, the

Plaintiff testified that he was is able to live a fairly normal life, preparing meals, doing laundry,

running errands, tending to personal care, paying bills, and functioning socially (R. 33, 47-49,

51), despite the need to care for the recurrent hernia condition. (R. 46). Although the condition

has the potential for recurrence, the ALJ correctly concluded that "there is no evidence that the

Plaintiff's hernia, on an ongoing basis, results in chronic pain or health problems that would

preclude the Plaintiff from substantial gainful activity;" the condition may only limit his

working exertional level, but does not preclude Plaintiff from work. (R. 19, *see* R. 287).

Plaintiff relies on *Diaz v. Commr. Of Soc. Sec.*, 577 F.3d at 504, in which the United

States Court of Appeals for the Third Circuit held that "an ALJ must clearly set forth the

reasons for his decision" and explained that "conclusory statements that a condition does not

constitute the medical equivalent of a listed impairment are insufficient." An ALJ must provide

discussion of the evidence to "enable meaningful judicial review." In *Diaz*, the Court of

---

[6]  The ALJ reasonably interpreted Dr. Maalouf's note that "the Plaintiff had a previous history of gastric bypass that
was not successful due to noncompliance; [and] that this resulted in a ventral incisional hernia, which was repaired,"
as attributing Plaintiff's potentiality for the recurrent hernia to non-compliance with his treatment for obesity. (R. 19,
*citing* R. 322).

16

Appeals held that the ALJ erred in failing to discuss the impact of Plaintiff's obesity in combination with her other impairments. *Id.* The Court noted that "were there *any* discussion of the combined effect of Diaz's impairments, we might agree with the District Court. However, absent analysis of the cumulative impact of Diaz's obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." *Id.* at 504 (emphasis in original). Here, unlike *Diaz*, the record is replete with the ALJ's consideration of the effects of Cumberland's obesity in combination with his other impairments. *See e.g.* R. 46, 52, 222—224, 234—236, 229, 231, 326. Further, plaintiff does not point to any specific medical evidence or weakness in the ALJ's analysis that would indicate functional limitations or aggravation of conditions which could warrant remand of the ALJ's decision. Merely speculating that a Plaintiff's weight intensifies various physical systems, without specifying how obesity impairs a Plaintiff's ability to work, does not suffice to remand: "when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her [Plaintiff's] limitations and impairments," a generalized assertion that a Plaintiff's obesity causes limitations on work is not enough to require a remand. *Rutherford*, 399 F.3d at 553. Rather, a Plaintiff must demonstrate specifically how obesity would affect the five-step analysis undertaken by the ALJ. *Id.* Moreover, the *Rutherford* court held that a remand for the purpose of more explicit discussion with regards to Plaintiff's obesity is not required if it would not affect the outcome of the case. *Id.*

In sum, the Court finds that the ALJ properly analyzed the objective medical facts and other findings of record in detail, and substantial evidence supports the ALJ's conclusion

that Cumberland had no combination of impairments that met or equaled a listing at step three. The ALJ's consideration of Plaintiff's obesity in combination with his sleep apnea and ventral hernia repair was proper.

2. *The ALJ's Decision Is Supported By Substantial Evidence, As He Properly Considered Plaintiff's Age, Education, Work Experience, and Residual Functional Capacity To Determine At Step Five That A Successful Adjustment To Other Work Could Be Made And That There Are Jobs That Exist In Significant Numbers In The National Economy That Plaintiff Can Perform, Such That Plaintiff Is Not Disabled Under the Act.*

Cumberland's second argument is that the ALJ failed to consider the impact of Plaintiff's obesity on his ability to perform work at step five due to fatigue. (Pl.'s Br. At 12). Also, Plaintiff contends that the ALJ wrongly rejected limitations that Cumberland would be off-task for twenty percent of the workday and would require an extra fifteen minute break in the morning and afternoon and that such limitations which would render him unemployable, and thus, disabled under the Act. (R. 13).

"The ALJ must consider the effects of Plaintiff's obesity individually and in combination with [his] impairments, on [his] workplace function at step three and every subsequent step." *Diaz v. Commr. Of Soc. Sec.*, 577 F.3d at 504; *see* Pl.'s Br. at 10. SSR 02-1p indicates that obesity may cause limitations on exertional functions, among other things, and "may also have an effect on 'an individual's ability to perform routine movement and necessary physical activity within the work environment or 'the ability to sustain a function over time'." (Pl.'s Br. at 10); *citing* SSR 02-1p ¶ 8.

The ALJ went through a lengthy and thorough analysis to first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms, considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" as required by 20 C.F.R. §§ 404.1529 and 416.929. (R. 18—22). Then, the ALJ evaluated the "intensity, persistence, and limiting effects of the Plaintiffs symptoms to determine the extent to which they limit the Plaintiff's functioning," based on the entire record. (R. 19).

There is substantial evidence to support the ALJ's analysis. First, there is evidence that the Plaintiff's hernia might limit him to work within a limited range at the light exertional level, however there is no evidence to indicate that the Plaintiff's hernia is either a permanent condition, or that it results in chronic pain or health issues that would bar him from substantial gainful activity. To the contrary, the Plaintiff testified that he is able to live a fairly normal life despite the necessity for care of the condition. (R. 45—49). Second, the record does not reflect chronic pain or limitations resulting from the Plaintiff's osteoarthritis of the knees, severe sleep apnea, and/or mental impairments that are inconsistent with the residual functional capacity. (R. 20). Further, the ALJ correctly notes that the "Plaintiff's activities of daily living are not limited as would be expected for an individual with disabling medical conditions." (R. 20). Cumberland testified that he drives, runs errands for his mother and girlfriend which include grocery shopping and paying bills, tends to personal care, prepares meals, does laundry and dish washing, plays computer games, takes his girlfriend to bingo, family gatherings, and fairs,

and has taken computer classes, plays cards, and board games, and is a member in the American Legion. (R. 45—49). The ALJ correctly decided that the residual functional capacity assessment is supported by objective medical evidence concerning the Plaintiff's recurrent hernia, and Plaintiff's activities of daily living, which reflect a normal, functional life. (R. 21). With respect to Plaintiff's specific argument surrounding his fatigue, the ALJ reviewed the medical evidence, including extensive evidence of Plaintiff's obesity from 2004—2009, during which time Cumberland was gainfully employed, to conclude that his fatigue did not cause a limitation. (*See* R. 203).

Plaintiff's work experience as a custodian for five nights in November 2010 was also considered by the ALJ to assess Plaintiff's RFC. (*See* R. 231). Indeed, the ALJ recognized that Plaintiff could not perform "medium" work, such as a custodial position (R. 57), so the ALJ restricted Plaintiff to light work (R. 22). Recognizing that Plaintiff needed a break restriction for medium work as posed in the hypothetical, it was reasonable for the ALJ to conclude that limiting Plaintiff to light work eliminated the necessity for a break. (R. 22). Even if Plaintiff could not complete light work, the VE testified that there are significant numbers of sedentary work existing in the national economy which Plaintiff could perform. (R. 59).

Substantial evidence supports the ALJ's conclusion that a 20% off-task restriction would not be warranted. (R. 231, 197). The job coach reported that Plaintiff "catches on to a job quickly," and Plaintiff reported that he is good at following spoken instructions and can pay attention as long as needed. Further, to the extent that the hypothetical posed by the Plaintiff's attorney incorporating off-task time and break time was inconsistent with the evidence in the

record of Plaintiff's capability, the ALJ had the authority to disregard the response. *Jones v. Barnhart*, 364 F.3d at 506. Testimony of the vocational expert provided substantial evidence for the conclusion of the ALJ that Plaintiff retained an RFC to perform work that exists in significant numbers in the national economy.  Plaintiff is therefore not disabled. *See Rutherford*, 399 F.3d at 554.

**IV.      Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which he faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the findings of the ALJ, which are supported by substantial evidence, and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.

For all of the reasons hereinabove set forth, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.


McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SCOTT E. CUMBERLAND,                   )
                                       )
                  Plaintiff            )
       v.                              )        02: 12-cv-01671
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner of Social Security,)
                                       )
                  Defendant.           )

## ORDER OF COURT

**AND NOW**, this 3rd day of July, 2013, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1.      Plaintiff's Motion for Summary Judgment (Document No. 9) is DENIED.

2.      Defendant's Motion for Summary Judgment (Document No. 12) is

GRANTED.

3.      The Clerk will docket this case closed.


                        BY THE COURT:

                        s/Terrence F. McVerry
                        United States District Court Judge


cc:     Elizabeth Smith, Esquire
        Email: smithlawoffices@zoominternet.net

        Michael Colville,
        Assistant U.S. Attorney
        Email: michael.colville@usdoj.gov